UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **777 PARTNERS LLC and INSURETY CAPITAL LLC,**<br><br>        Plaintiffs,<br><br>v.<br><br>**CHRISTOPHER JAMES PAGNANELLI,**<br><br>        Defendant. | Civil Action No.<br>1:20-CV-20172-JEM |

### THIRD PARTIES, NIIA AND AHCM'S, EXPEDITED MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Third Parties National Individual Insurance Agency, LLC (NIIA) and Association Health Care Management, Inc. (AHCM) seek an order from the Court under Federal Rule of Civil Procedure 26(c)(1) forbidding inquiry by the Plaintiffs or any other party in this litigation into any of the following:

1. Any information that would reveal the identity of NIIA's advance partner;
2. Any information related to NIIA; and
3. Any information about the activities of ACHM or American Workers Insurance Services, Inc. (AWIS) on any matter on or after June 2019.

NIIA and AHCM incorporate their memorandum of law into their Motion as required by Local Rule 7.1(a).

NIIA AND AHCM seek an expedited ruling under Rule 7.1(d)(2) no later than March 16, 2021. An expedited ruling is necessary because the deposition of defendant Christopher James Pagnanelli is scheduled to occur March 17, 2021 and NIIA and AHCM have reason to believe the Plaintiffs will seek the information NIIA and AHCM seek to protect at the deposition. Alternatively, NIIA and AHCM request that the Court postpone

the deposition until this motion can be ruled upon.

## I. SUMMARY OF ARGUMENT

The Plaintiffs are seeking to obtain information about NIIA and AHCM that they were already denied as part of AHCM's bankruptcy proceeding. The United States Bankruptcy Court for the Northern District of Texas expressly denied Insurety's attempt to obtain the same information that Movants seek to protect by way of this motion. There is good cause to protect this information in this case. There is a substantial risk that the Plaintiffs would use the information they seek about NIIA and AHCM for an improper purpose. Insurety has already repeatedly demonstrated that it is intent on harming the business of NIIA and AHCM, even in situations where Insurety would be financially harmed as a result. This risk is a substantial part of the reason that a United States Bankruptcy Court denied Insurety discovery of the information the Plaintiffs now seek.

Further, there is no basis to believe any information the Plaintiffs seek about NIIA or AHCM would be relevant in this dispute. There is no reasons to believe that any information about NIIA or AHCM has any relevance to any of the Plaintiffs' claims. Neither are competitors or customers of the Plaintiffs. Pagnanelli's employment with the Plaintiffs ended months before his eventual employment by AHCM. There is no logical connection between AHCM or NIIA and the Plaintiffs' claims.

Finally, if the information NIIA and AHCM seek to protect were actually important to the Plaintiffs, they would have sought to acquire it sooner. They have had ample opportunity in this case and the AHCM bankruptcy proceeding. Their failure to do so indicates that the Plaintiffs do not have any important or appropriate interest in the information.

Therefore, NIIA and AHCM seek a protective order from this Court limiting the scope of discovery related to them, including preventing the Plaintiffs from seeking such information from Pagnanelli at his deposition.

## II. FACTUAL BACKGROUND

AWIS and AHCM are businesses in the health insurance industry. (Brock Aff. Ex. 5 ¶ 4.) AWIS markets insurance products and AHCM administers the insurance products and acts as a third party administrator (TPA). (*Id.* ¶¶ 4-5.) NIIA took over AWIS's role in late 2019. (Jordan Decl. Ex. 1 ¶¶ 8, 16-17.)

Obtaining commission advances is a critical part of the business of companies like AWIS and NIIA in the insurance sales industry. (Jordan Dec. Ex. 1 ¶ 4.) Those companies retain individuals or groups of salespeople referred to as "producers" that sell the insurance products on a commission basis. (*Id.* ¶¶ 2-4.) However, the monthly commission on any individual health insurance policy are low. (*Id.* ¶ 2.) A company like NIIA facilities commission advances from a commission advance company that purchases the commissions from the producers.[1] (*Id.*) This allows the producers to receive a substantial amount of their commissions up front in exchange for the producers giving up some of the value from each monthly commission. (*Id.*) In this arrangement, AHCM handles the money in its role as TPA and pays what is owed to the commission advance company. (*Id.* ¶ 17.)

Insurety began providing commission advances to AWIS's producers in July 2018. (Jordan Dec. Ex. 1 ¶ 3.) Defendant Christopher Pagnanelli was the President of Insurety

---

[1] The transactions are set up as purchases rather than loans so that the commission advance company can argue it is not subject to laws applicable to lenders, such as interest rate caps.

at that time, but his employment with Insurety ended in April 2019. Nonetheless, Insurety continued to provide commission advances to AWIS's producers for months after Pagnenelli's employment terminated. (*Id.*)

However, despite no breach of the commission advance agreement, Insurety refused to fund further commission advances in July 2019. (Jordan Dec. Ex. 1 ¶ 3.) Apparently, Insurety was impressed by the success of AWIS's business. Insurety was able to see the revenue AWIS was generating as part of the documentation it received in relation to commission advances. Insurety attempted to strong-arm Landon Jordan, AWIS's owner, into "selling" Insurety a substantial percentage of AWIS by holding the commission advances hostage. (*Id.* ¶ 3.) Insurety knew that withholding commission advances threatened AWIS's entire business (*Id.* ¶ 4.)

Jordan did not acquiesce to AWIS's strong-arm effort. But when he attempted to obtain commission advances from an alternative source, Insurety sabotaged those efforts and obtained a temporary restraining order—using an anti-competitive restriction—prohibiting AWIS from obtaining another advance partner. (Jordan Dec. Ex. 1 ¶¶ 6-10; Safina Aff. Ex. 2; TRO Ex. 3, TRO Extension Ex. 4.)

Insurety's actions forced AWIS and AHCM to file for bankruptcy in October 2019 to reorganize the debts (they were contractually liable for at least some of Insurety's commission advances despite not receiving the advances themselves).

Jordan was able to arrange a workaround to provide AWIS and AHCM hope. (Jordan Decl. Ex. 1 ¶¶ 9, 14-18.) Jordan already owned NIIA as a shell entity and in late 2019 set it up to function the same way AWIS had. (*Id.*) NIIA (with the assistance of Pagnanelli who became an employee of AHCM) obtained a new commission advance

partner. (*Id.*) AHCM still administers the insurance products sold by NIIA and the same fees, other than a $10 per policy fee to an alternative TPA insisted upon by the new advance partner. (*Id.* ¶ 17.) This arrangement benefits all parties by allowing AHCM to remain in business, generating revenue to pay creditors, and discouraging producers from twisting old policies (selling a new policy to replace and old one) that would eliminate commissions purchased by Insurety. (*Id.* 13-16.)

Yet, Insurety has repeatedly attempted to disrupt the arrangement during the bankruptcy despite the benefits to Insurety (as the largest creditor). (*Id.* 12.) At a hearing early in the case regarding the use of cash collateral, Insurety made it clear to the bankruptcy judge that its primary interest was sabotaging the business of AWIS, AHCM, and NIIA even though the likely result was that Insurety would lose money:

> MR. PECK: Well, to your point, Your Honor, is if the producers aren't paid tomorrow, the producers go away, the producers try to move their clients, who are generally in this premium stream –
>
> THE COURT: But if I sustain your objection, isn't that inevitable?
>
> MR. PECK: Yes. I'm saying that, despite that fact, we're prosecuting this objection. So, we understand that that could be the result, and we're okay with it.

(Excerpts from Hearing Transcript Ex. 6 at 182, 191-192.)

Further, Insurety tried to compel disclosure of information from NIIA about its advanced partner by arguing that such information was critical to the bankruptcy and that the debtors should have tried harder to have AWIS acquire the commission advance partner. (Insurety Mot. to Compel Ex. 7 at 6-7.) Insurety did so even though—as the Debtors pointed out in response to the motion—Insurety had actively frustrated AWIS's efforts to obtain a commission advance partner, including obtaining a TRO that prevented it. (Debtors Resp. Ex. 8.) Indeed, NIIA believed that Insurety's real goal was not

acquisition of information related to the bankruptcy, but obtaining information about NIIA's advance partner so that it could sabotage the relationship. (NIIA Resp., Ex. 9.)

In April 2020, the Court ultimately permitted Insurety to have the documents it argued were so important, but permitted NIIA to redact any information that might disclose the identity of the advance partner. (Bankruptcy Order, Ex. 10.) Insurety also took depositions related to these documents as part of the bankruptcy. Yet, despite the supposed importance of the information to the bankruptcy, Insurety has done nothing with the information—such as filing any motion—in the many months since receiving the redacted documents and taking the depositions.

Recently, the Plaintiffs in this case—Insurety and its parent company—sent untimely[2] third party subpoenas to individuals associated with NIIA and AHCM. (*See, e.g.* Jordan Objs. and Resp. to Subpoena, Ex. 11.) The incredibly broad requests make it clear that Insurety now seeks to acquire information about NIIA that it was unable to acquire in the bankruptcy proceeding. Further, Pagnanelli's counsel recently informed NIIA and AHCM's counsel that the Court had ordered Pagnanelli's deposition to occur and that the deposition would occur March 17, 2021.

Upon conferring with counsel for the Plaintiffs about the relief sought in this motion, the Plaintiffs refused to agree to any limits on the scope of inquiry at Pagnanelli's deposition.

### III. ARGUMENT

Rule 26(b)(1) provides that the scope of discovery covers any matter that is

---

[2] Jordan's counsel did not know the subpoenas were untimely until after serving his objections and reaching out to Pagnanelli's counsel.

relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Proportionality is also a consideration in determining permissible discovery. Proportionality and factors that should be considered were included in Rule 26(b)(1) when they were added in 1983. Memorandum from Hon. David G. Campbell to Hon. Jeffrey Sutton at 7 (June 14, 2014) available at https://www.uscourts.gov/sites/default/files/fr_import/CV05-2014.pdf. They were moved to Rule 26(b)(2)(C) in 1993. (*Id.*) But they were moved back into the description of the scope of discovery in Rule 26(b)(1) in 2015 to bring greater emphasis to considerations of proportionality. *Id.* at 7-8. The goal of the amendment was to "bring[] an end to the days of nearly unlimited discovery and 'encourage[s] judges to be more aggressive in identifying and discouraging discovery overuse.'" *Waters v. Drake*, 222 F. Supp. 3d 582, 605–06 (S.D. Ohio 2016) (alteration in original) (citation omitted).

As Chief Justice Roberts observed, "Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery:

> The amended rule states, as a fundamental principle, that lawyers must size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need.

Roberts, Supreme Court, 2015 Year-End Report on the Federal Judiciary 6 (Dec. 31, 2015), available at https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf. "Implicit in both the language and the spirit of the 2015 Amendments is the obligation, at any stage of a case, to prevent parties from expending increasing time and energy pursuing diminishing returns." *Armstrong Pump, Inc. v. Hartman,* No. 10-CV-4465, 2016 WL 7208753, at *3 (W.D.N.Y. Dec. 13, 2016). For the party requesting discovery, however, a showing that discovery is proportional to the needs of the case is a threshold

concern. *Gilead Scis., Inc. v. Merck & Co, Inc.*, 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence." *Id.* Instead, the requesting party must demonstrate why the discovery they seek is appropriate. *Id.*; Fed. R. Civ. P. 26, 2015 comm. note. Further, Rule 26(b)(2)(C) specifically mandates that a court limit discovery that is unreasonable or better obtained from another source. Fed. R. Civ. P. 26(b)(2)(C).

This requirement is even more important in cases that involve information from third parties. Rule 45 states that a subpoena must not subject the third party to undue burden. *Turnbow v. Life Partners, Inc.*, 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013). "Among the factors that the court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citation omitted).

In fact, upon a showing of good cause, the court can forbid inquiry into certain matters or otherwise limit the scope of discovery. Fed. R. Civ. P. 26(c)(1). "The court has broad discretion to fashion protective orders to ensure the discovery process is not manipulated in furtherance of any improper purpose." *Kaplan v. Lappin*, 10-80227-CIV, 2011 WL 13225153, at *2 (S.D. Fla. Jan. 14, 2011). When determining whether a movant has established good cause "a court should balance the non-moving party's interest in obtaining the requested discovery and preparing for trial against the moving party's proffer of harm that would result from mandating the discovery go forward as scheduled." *Id.*

In this case, there is clearly good cause to limit discovery in this case as requested by NIIA and AHCM. First, NIIA and AHCM have a substantial interest in protecting the information about themselves and there is a substantial risk that the Plaintiffs will use the information for an improper purpose. Second, there is no logical connection between the information the Plaintiffs seek about NIIA and AHCM and this litigation. Third, the Plaintiffs could have already obtained any legitimate discovery related to NIIA or AHCM in the bankruptcy court.

**A.     NIIA and AHCM have a substantial interest in protecting the information about themselves and there is a substantial risk that the Plaintiffs will use the information for an improper purpose.**

The interest of the party that is seeking protection from the court is important in determining good cause for a protective order. *Kaplan*, 2011 WL 13225153 at *2. NIIA and AHCM have such an interest because there is a real risk that the Plaintiffs are seeking the information for an improper purpose.

This is not the first occasion in which Insurety has sought information about NIIA and AHCM that appeared to have no legitimate interest. Insurety specifically sought to compel the name of NIIA's advance partner and other information as part of the AHCM and AWIS bankruptcy proceeding. After full briefing an argument from the parties, the Court denied Insurety's request. (Bankruptcy Order, Ex. 10.) The Court ordered NIIA to provide documents associated with the advance partner, but permitted redaction of any information that might indicate the identity.

The reason is clear: Insurety could not articulate a reason why they needed the information while NIIA had articulated a very specific risk that Insurety would use the information for an improper purpose. Indeed, NIIA had provided evidence that Insurety

had repeatedly attempted to interfere with NIIA's business even though it threatened financial harm to Insurety. (Debtors Resp. Ex. 8.) Insurety repeatedly sabotaged AHCM and AWIS's efforts to find a replacement advance partner. (Jordan Dec. Ex. 1 ¶¶ 6-10; Safina Aff. Ex. 2; TRO Ex. 3, TRO Extension Ex. 4.) Further, early on in the bankruptcy, Insurety's counsel made it clear that they wanted to deny AHCM and AWIS the ability to continue conducting business even though it meant Insurety would likely not recover as much money from the bankruptcy estate. (Excerpts from Hearing Transcript Ex. 6 at 182, 191-192.) Insurety has demonstrated an interest in harming the business of AHCM and NIIA even though it would harm their own financial interests. The bankruptcy judge denied Insurety's attempts to do so. Thus, this Court should protect AHMC and NIIA by preventing the Plaintiff's efforts to seek the information in this case that were denied to Insurety in the bankruptcy.

**B.    There is no logical connection between the information the Plaintiffs seek about NIIA and AHCM and this litigation.**

The interest of the party that is seeking the information is important in determining good cause for a protective order. *Kaplan*, 2011 WL 13225153 at *2. In this case, the Plaintiffs have never articulated how the information they apparently seek could possibly be relevant to this case. NIIA and AHCM believe there is no relevant connection.

The Plaintiffs have asserted the following claims:

- Breach of contract for alleged activities to setup a company in competition with Insurety during Pagnanelli's employment and breach of noncompetition, non-disparagement, and non-solicitation covenants after Pagnanelli's employment;

- Breach of fiduciary duty based on the same conduct alleged for breach of contract;

- Defamation based on an alleged statement to unnamed third parties of Insurety that "Insurety has no money," intending to induce Insurety's customers and potential customers from refraining from, or ceasing, to conduct business;

- Violation of the Computer Fraud and Abuse Act based on alleged unauthorized access to Insurety computer files by Pagnanelli; and
- Violations of Florida's Uniform Trade Secrets Act for alleged misappropriation of Insurety's trade secrets.

There is no reason to believe that information about NIIA and AHCM that the Plaintiffs apparently seek in this lawsuit has any connection to these claims. Neither NIIA nor AHCM are competitors or customers of the Plaintiffs. AHCM had a contractual relationship with Insurety related to Insurety's advance funding of AWIS, but that ended long ago during AHCM's bankruptcy. NIIA did not even have any operations until months after Pagnanelli's employment. AHCM and AWIS had a satisfactory relationship with Insurety even after Pagnanelli's termination until Insurety ceased providing advances to AWIS in the summer of 2019 in an attempt to extort an ownership interest in AWIS. (Jordan Dec. Ex. 1 ¶ 3.)

The details regarding the supposed disparagement or defamation of the Plaintiffs are scant, but there does not appear to be any connection between those allegations and NIIA or AHCM.

As for the Computer Fraud and Abuse Act and Florida's Uniform Trade Secrets Act claims, Insurety has not identified any connection between those claims and NIIA or AHCM. There are no allegations or evidence of NIIA or AHCM's involvement. Indeed, their involvement would make little sense. Neither NIIA nor AHCM had any access to the Plaintiffs confidential files. Further, neither would have any interest in or use for Insurety's trade secrets because they are not competitors or customers of Insurety.

This lawsuit primarily concerns the actions of Defendant Pagnanelli in relation to his employment by Insurety. That employment ended in April 2019. NIIA did not begin

operations until late 2019. Thus, it is unclear what possible relevance information about NIIA and AHCM after the summer of 2019 could have in this case.

Pagnanelli eventually became employed by AHCM and assisted in finding the advance partner for NIIA. However, that is not a sufficient connection to believe the information Insurety seeks from NIIA or AHCM is relevant. The fact that the Plaintiffs may be entitled to inquire into some activities of **Pagnanelli** after his employment with Insurety ended does not mean that either **AHCM or NIIA** has any information related to activities that would relate to Insurety. Indeed, all indications about the discovery the Plaintiffs seek—from the overbroad untimely document requests to the refusal to agree to any limits on the scope of Pagnanelli's deposition—indicates that the Plaintiffs are after something other than information relevant to their claims against Pagnanelli.

Indeed, Insurety has a demonstrated history of seeking information about NIIA in discovery—such as the identity of its advance partner—that it could not demonstrate any relevance. Insurety filed a motion to compel the name of the advance partner—as well as other information—from NIIA in the AHCM and AWIS bankruptcy. The issue was fully briefed and argued before the bankruptcy judge, who denied access to the key information Insurety wanted. (Bankruptcy Order, Ex. 10.) Because of the equitable interests involved in the AHCM and AWIS bankruptcy and NIIA's involvement, the scope of potentially valid discovery was much broader in that case than here. Yet, Insurety was not able to demonstrate a relevant need for the information it wanted from NIIA and AHCM in the bankruptcy.

In this case, the Plaintiffs want a second bite at the apple—seeking the same information denied by the bankruptcy judge—with even less basis for its relevance. The

Plaintiffs have not demonstrated any legitimate interest in the discovery they seek about NIIA and AHCM.

**C.    The Plaintiffs already had the opportunity to seek any important information about NIIA and AHCM in the bankruptcy so that further discovery efforts are unjustified.**

Under Rule 26(b)(2)(C), the Court may limit discovery to the extent that a party has already had ample opportunity to acquire relevant information. In this case, Insurety has had ample opportunity to acquire information in more than one proceeding. It has participated substantially in the bankruptcy proceeding and, in fact, has been the key reason for much of the motion practice in the bankruptcy. It has conducted discovery in that proceeding. In fact, the Plaintiffs' request to re-produce NIIA's document production from the bankruptcy proceeding in this case[3] is what brought the need for the protective order to the forefront.

The Plaintiffs have also apparently had ample opportunity to conduct discovery in this case, but chose not to do so until the close of discovery. They attempted to obtain belated third party discovery about NIIA and AHCM, but were denied because of the discovery deadline. If the information they seek about NIIA and AHCM were actually important to this litigation, they certainly would have and could have obtained it before now. And they could have done so through means that would have ensured protections for NIIA and AHCM without their having to seek a protective order in advance. The fact that the Plaintiffs have already had ample opportunity to obtain any important information from NIIA and AHCM is further reason to protect NIIA and AHCM from further discovery.

---

[3] While NIIA still does not understand the relevance of its production to this proceeding, it acquiesced to the re-production in this case as long as the documents continued to be protected by a confidentiality order.

**Expedited Motion for Protective Order**     Page 13 of 16

## IV. CONCLUSION

NIIA and AHCM have demonstrated good cause to grant the protective order they seek. There is a substantial risk that the Plaintiffs would use the information NIIA and AHCM seek to protect for an improper purpose. There is no legitimate need for the information in this case because it could not be relevant. And the Plaintiffs have already had ample opportunity to acquire any information about NIIA and AHCM that is actually important to this case. The Court should grant the protective order requested by NIIA and AHCM.

## Rule 7.1(3) CERTIFICATION

Counsel for NIIA and AHCM has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: March 10, 2021.   Respectfully Submitted,

**SPENCER FANE LLP**

By: */s/ J. Kirby McDonough*
J. Kirby McDonough
Florida Bar No. 79031
kmcdonough@spencerfane.com
201 N. Franklin Street, Suite 2150
Tampa, FL 33602
Telephone: 813-424-3500
Facsimile: 813-405-8904
*Attorney for Third Parties NIIA and AHCM*

By: */s/ Brian W. Zimmerman*
Brian W. Zimmerman
(pro hac vice application to follow)
Texas State Bar No. 00788746
bzimmerman@spencerfane.com
Nicholas Reisch

        Texas State Bar No. 24046699
        nreisch@zimmerlaw.com
        3040 Post Oak Blvd., Suite 1300
        Houston, TX 77056
        Telephone:   713-552-1234
        Facsimile:    713-963-0859
        *Attorneys For Third Party National Individual Insurance Agency*

By:   */s/ J. Robert Forshey*
        J. Robert Forshey
        (pro hac vice application to follow)
        Texas State Bar No. 07264200
        bforshey@forsheyprostok.com
        Laurie Dahl Rea
        (pro hac vice application to follow)
        Texas State Bar No. 00796150
        lrea@forsheyprostok.com
        777 Main Street, Suite 1550
        Fort Worth, TX 76102
        Telephone:   817-877-8855
        Facsimile:    817-877-4151
        *Attorneys for Association Health Care Management, Inc*.

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March 2021, I served all counsel of record pursuant to Federal Rule of Civil Procedure 5(b)(2), as follows:

Bennett Ryan Blachar
Arnstein, Lehr LLP
200 South Biscayne Boulevard
Suite 3600
Miami, FL 33131
Email: bennett.blachar@saul.com

John Gekas
Saul Ewing Arnstein & Lehr LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
Email: John.Gekas@saul.com

Steven Myer Appelbaum
Saul Ewing Arnstein & Lehr LLP
200 South Biscayne Blvd.
Suite 3600
Miami, FL 33131
Email: Steven.Appelbaum@saul.com

John Anthony Turner
Saul Ewing Arnstein & Lehr LLP
Northbridge Center
515 North Flagler Drive, Suite 1400
West Palm Beach, FL 33401
Email: john.turner@saul.com

*Attorneys For Plaintiffs,*
*777 Partners LLC and*
*Insurety Capital LLC*

Andrew Bryan Zelmanowitz
Berger Singerman LLP
350 East Las Olas Boulevard
Suite 1000
Fort Laudedale, FL 33301
AZelman@bergersingerman.com

Kenneth Wayne Waterway
Berger Singerman LLP
350 E Las Olas Blvd
Suite 1000
Fort Lauderdale, FL 33301
kwaterway@bergersingerman.com

*Attorneys for Defendant,*
*Christopher James Pagnanelli*

/s/ J. Kirby McDonough
Attorney