Brian W. Zimmerman
State Bar No. 00788746
bzimmerman@spencerfane.com
Nicholas J. Reisch
State Bar No. 24046699
nreisch@spencerfane.com
**SPENCER FANE LLP**
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
(713) 552-1234
(713) 963-0859 fax
ATTORNEYS FOR NON-PARTY
NATIONAL INDIVIDUAL
INSURANCE AGENCY, LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11 Cases** |
| | ) | |
| **AMERICAN WORKERS INSURANCE** | ) | **Case No. 19-44208-mxm11** |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **ASSOCIATION HEALTH CARE** | ) | **Case No. 19-44209-mxm11** |
| **MANAGEMENT, INC.** | ) | |
| | ) | **Jointly Administered Under** |
| Debtors. | ) | **Case No. 19-44208-mxm11** |

## NATIONAL INDIVIDUAL INSURANCE AGENCY, LLC'S RESPONSE TO INSURETY'S MOTION TO COMPEL

### I.     INTRODUCTION

1.     AWIS and AHCM are currently in bankruptcy because Insurety refused to provide future commission advances to AWIS despite the fact that AWIS and AHCM did not breach any of the agreements with Insurety. In addition, Insurety intentionally interfered with two substantial efforts by Landon Jordan on behalf of NIIA to obtain a new commission advance provider to fund future commissions. And Insurety actually obtained a temporary restraining order in state preventing AWIS from obtaining commission advances from another company. This was after

**NIIA and Jordan Resp. to Mot. To Compel**          **Exhibit 9**          1

Insurety sought to purchase AWIS and AWIS declined. The available evidence demonstrates that NIIA and Jordan are reasonable to fear that Insurety will use information about NIIA's current advance partner and business activities to interfere with that relationship. This would harm AWIS and AHCM. The available evidence indicates that Insurety has prioritized the goal of harming AWIS and AHCM, rather than acting for their benefit as it claims. This is reason enough to deny the motion to compel.

2.      But there are other reasons. First, the discovery Insurety seeks to compel is facially overbroad, which alone is justification for denying the motion. Second, the discovery Isurety seeks to compel does not seek relevant information. Insurety has made no showing of relevance and is merely speculating that the numerous documents it seeks may contain relevant information. Federal case law indicates such "fishing expeditions" are improper and the Court should deny Insurety's attempt to do so. Third, the conclusory arguments offered by Insurety do not make any sense given the actual circumstances in this case.

3.      NIIA and Jordan also incorporate the response to Insurety's Motion filed by the Debtors AWIS and AHCM. (See Docket No. 203.)

4.      Based on the arguments in both responses, the Court should deny the motion to compel.

## II.    ARGUMENT AND AUTHORITES

5.      The general rules of discovery in federal court are clear and well established. Rule 26(b)(1) provides that the scope of discovery covers any matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Proportionality is also a consideration in determining permissible discovery. Proportionality and factors that should be considered were included in Rule 26(b)(1) when they were added in 1983. Memorandum from Hon. David G. Campbell to Hon.

Jeffrey      Sutton      at      7      (June      14,      2014)      available      at
https://www.uscourts.gov/sites/default/files/fr_import/CV05-2014.pdf. They were moved to Rule
26(b)(2)(C) in 1993. (*Id.*) But they were moved back into the description of the scope of discovery
in Rule 26(b)(1) in 2015.

6.      Rule 26(b)(1) was amended in 2015 to bring greater emphasis to considerations of
proportionality. *Id.* at 7-8. The goal of the amendment was to "bring[] an end to the days of nearly
unlimited discovery and 'encourage[s] judges to be more aggressive in identifying and
discouraging discovery overuse.'" *Waters v. Drake*, 222 F. Supp. 3d 582, 605–06 (S.D. Ohio 2016)
(alteration in original) (citation omitted). As Chief Justice Roberts observed, "Rule 26(b)(1)
crystalizes the concept of reasonable limits on discovery through increased reliance on the
common-sense concept of proportionality[.]" Roberts, Supreme Court, 2015 Year-End Report on
the      Federal      Judiciary      6      (Dec.      31,      2015),      available      at
https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.      Chief      Justice
Roberts went on to emphasize:

> The amended rule states, as a fundamental principle, that lawyers must size and
> shape their discovery requests to the requisites of a case. Specifically, the pretrial
> process must provide parties with efficient access to what is needed to prove a claim
> or defense, but eliminate unnecessary or wasteful discovery. The key here is careful
> and realistic assessment of actual need.

*Id.*

7.      "Implicit in both the language and the spirit of the 2015 Amendments is the
obligation, at any stage of a case, to prevent parties from expending increasing time and energy
pursuing diminishing returns." *Armstrong Pump, Inc. v. Hartman*, No. 10-CV-4465, 2016 WL
7208753, at *3 (W.D.N.Y. Dec. 13, 2016). "There is no obligation on the part of a responding
party to examine every scrap of paper in its potentially voluminous files in order to comply with

its discovery obligations." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). For the party requesting discovery, however, a showing that discovery is proportional to the needs of the case is a threshold concern. *Gilead Scis., Inc. v. Merck & Co, Inc.*, 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence." *Id.* Instead, the requesting party must assist the court "in reaching a *case-specific* determination of the appropriate scope of discovery." Fed. R. Civ. P. 26, 2015 comm. note. (Emphasis added).

8.     This requirement is even more important in cases, like here, when Insurety is attempting to subpoena information from a third party because Rule 45 states that the a subpoena must not subject the third party to undue burden. *Turnbow v. Life Partners, Inc*., 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013). "Among the factors that the court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citation omitted). The status of a witness as a nonparty entitles the witness to consideration regarding expense and inconvenience. *Id.* Undue burden can be found when a subpoena is facially overbroad. *Id.*

9.     In this case, a case-specific evaluation demonstrates that Insurety is not entitled to the information or documents it seeks to compel. In fact, the motion to compel can and should be denied because (1) the requests are facially overbroad; (2) Insurety has failed to demonstrate the requests seek relevant information; (3) Insurety's theoretical arguments for relevant are illogical; and (4) NIIA and Jordan have a reasonable fear that Insurety would misuse the information it seeks.

**A. Regardless of supposed potential relevance, Insurety's motion should be denied because the requests are facially overbroad.**

10.    If a discovery request does not provide guidance to determine the proper scope of an overly broad or burdensome request for discovery, then the responding party has no obligation to even partially respond to a request. *Kleppinger v. Texas Dep't of Transp.*, CV L-10-124, 2012 WL 12893651, at *1-2 (S.D. Tex. Mar. 4, 2012). Further, any motion to compel based on facially overbroad discovery can be denied by a court on that basis alone. *Id.* at *14; *Pitre v. Epps*, CV 18-1562, 2018 WL 3094367, at *2 (E.D. La. June 22, 2018); *Whitt v. Stephens County*, 1:06-CV-022-C ECF, 2007 WL 9754677, at *3 (N.D. Tex. Apr. 27, 2007) In fact, on more than one occasion, the Fifth Circuit has indicated (albeit in passing) that district courts acted properly in doing so. *Audibert v. Lowe's Home Centers, Inc*., 152 Fed. Appx. 399, 402 (5th Cir. 2005); *Barnes v. Madison*, 79 Fed. Appx. 691, 698–99 (5th Cir. 2003).

11.    Here, Insurety claims that its requests are narrow and targeted, but the actual text of the requests indicates otherwise:

**Request No. 5 to NIIA and No. 6 to Landon Jordan:**
All Documents and Communications relating to any financing transactions or arrangement entered into or contemplated by NIIA relating to the provision of commission advance payments, including but not limited to loans, mortgages, credit agreements, factoring agreements, and assignments, and draft versions thereof.

**Request No. 6 to NIIA and No. 7 to Landon Jordan:**
Any Documents or Communications (including contracts) reflecting the source and amounts of NIIA's funding for commission advances.

**Request No. 9 to NIIA and Landon Jordan:**
All Communications reflecting discussions regarding the formation and operation of NIIA.

The requests are not particularized. They are not limited by time period, receiver, or sender. The sole limitation in the first two requests is a slight limitation on subject matter, but responsive documents would still encompass every document broadly "related" to commission advances,

including everyday communications with employees of the advance partner. The third request asks for every discussion regarding the "operation" of NIIA, which effectively asks for every email (and other document) since NIIA began operations.[1] Insurety claims that its proposed search terms limit the scope, but that is untrue. The search terms are so generic that they would effectively still seek broad swaths of every-day business documents from NIIA.

12.      Moreover, the broad sweep of these requests will undoubtedly pick up many privileged communications given the relationship between the NIIA arrangement and this bankruptcy proceeding. While Insurety may claim it is not after privileged documents, permitting the discovery will place an additional burden on NIIA to review and log such documents. The fact that a subpoenaed party will have to undertake substantial efforts to protect confidential information is a key consideration in whether the discovery is unduly burdensome. *See, e.g., Manookian v. Mervis*, CV 4:17-MC-00056, 2017 WL 3457063, at *2–3 (E.D. Tex. Aug. 11, 2017); *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003).

13.      Indeed, Insurety's requests are precisely the type of facially overbroad requests federal courts refuse to compel because they are facially overbroad. *Manookian*, 2017 WL 3457063 at *2; *In re O'Hare*, MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012). Indeed, federal courts deny such discovery even if a more narrowly tailored request might involve relevant information. This is because it should not be the duty of the trial court (or a third party receiving a subpoena) to refashion a party's overbroad requests to something more reasonable. Thus, the very ovebreadth of the requests is a sufficient basis along to deny them.

---

[1] Insurety is no longer seeking documents related to the formation of NIIA because NIIA provided concrete proof it was formed in 2016, prior to this bankruptcy proceeding and even prior to AWIS and AHCM's relationship with Insurety, i.e., there is not even a pretext of relevance. Of course, such information was publicly available on the Internet, but Insurety apparently did not bother to seek it prior to serving a subpoena requesting such documents.

**NIIA and Jordan Resp. to Mot. To Compel**                                                                 **6**

**B. Insurety has failed to demonstrate the relevance of the discovery it seeks.**

14. As explained above, the key reason for moving the proportionality factors to Rule 26(b)(1) was to encourage judges to be more aggressive in identifying and discouraging overly broad and unreasonable discovery. *Waters*, 222 F. Supp. 3d at 605–06. Too many trial courts were accepting the premise of relevance and permitting too broad discovery without a particularized showing by the seeker of discovery. "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence." *Gilead*, 2016 WL 146574, at *1. Of course, some courts required a particularized showing of relevance even before the amendment and denied "fishing expeditions" for relevant evidence. *See, e.g.*, *Boyd v. Am. Airlines, Inc*., 3-01-CV-2230-D, 2002 WL 32360294, at *1–2 (N.D. Tex. Oct. 17, 2002).

15. Insurety is engaged in just such a fishing expedition. It has not actually demonstrated that its supposed concerns are real. For example, Insurety claims it needs discovery on twisting of insurance policies, but has failed to offer any support for the idea that twisting is actually occurring. Recall that both before and after it ceased funding advances, along with weekly receipts of commissions and PMPM payments, Insurety receives weekly reports related to the commissions it purchased. If twisting of AWIS policies were occurring, Insurety would be in a position to know about it because it would be reflected in that commission information. Yet, Insurety has not provided any supposed evidence of such twisting.

16. As another example, Insurety claims it needs to discover whether there were any alternative commission advance providers that would provide a better deal to NIIA or would provide advances to AWIS. The reality is that there is no such better deal and it would not make sense for NIIA or AWIS to reject such a deal. (Jordan Decl., Ex 1 at ¶¶ 14, 16.) On the other hand, Insurety fails to provide any evidence of any other willing advance provider offering a better deal

to NIIA or even willing to offer a deal to AWIS. This failure is particularly glaring because Insurety *is* such an advance provider. Not only is Insurety well suited to know its potential competitors, but Insurety is also able to offer such advances itself. Indeed, it is common in bankruptcies for a creditor in the position of Insurety—a large creditor with a claimed secured position—to at least *compete* to be the DIP lender. Such an arrangement lets the creditor maximize protection of its pre-petition position and generate income that would otherwise go to another. Yet, Insurety has even failed to offer to be such an advance provider, much less identified another potential provider.

17. Likewise, Insurety claims it needs additional information about NIIA to assess the Court's approval of the NIIA/AHCM contract, but Insurety fails to offer any alternative to the NIIA contract. There is no such alternative. (Jordan Decl., Ex 1 at ¶14.) If this Court rejects the NIIA contract, all the available information indicates that AWIS and AHCM will fail and that this would be the worst result for their creditors. In fact, the available evidence is that the NIIA contract is great for AWIS and AHCM. They have been profitably operating under the arrangement with NIIA. No creditor, including Insurety, is complaining about the arrangement. Indeed, Insurety has received millions of dollars in payments.

18. The reality is that Insurety's supposed need for the documents it seeks are based on nothing more than supposition. There "might" be another advance provider willing to do advances with AWIS or to NIIA on better terms. NIIA "might" have been able to negotiate better terms with its advance provider. There "might" be twisting. A party should not be permitted to "roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Boyd*, 2002 WL 32360294, at *1–2 (citations omitted). Insurety has failed to sufficiently demonstrate any particularized need for the discovery it seeks. In fact, the only available information indicates that the documents Insurety seeks will not

have any relevance. Thus, Insurety's Motion to Compel should be denied.

**C. Insurety's arguments for supposed relevance do not make any sense.**

19.     As explained above, Insurety has not actually demonstrated that the documents it seeks will reveal relevant information. Insurety seeks documents because some of them "might" become relevant based on hypothetical facts. But separate and apart from the lack of any proof of relevance, even Insurety's arguments for relevance do not make any sense.

20.     First, Insurety claims that the NIIA contract increases the risk of twisting, but never explains the baseline comparison scenario for the increase. Without NIIA's relationship with an advance partner, there is no logical reason to believe AWIS and ACHM can continue to be profitable and function long term and every reason to believe they cannot. (Jordan Decl., Ex 1 at ¶¶14-15.) If AWIS and AHCM can no longer operate profitably and fail, this would almost certainly lead to twisting as producers switch to completely unaffiliated companies that do not have NIIA's incentive to help AWIS and AHCM. (*Id.*) If the comparison scenario is a failed AWIS and ACHM, which the evidence indicates is the only likely alternative, then twisting would almost certainly be lower with the NIIA contract than without it. Thus, Insurety's fear of increased twisting is not even logical.

21.     Second, Insurety claims that the NIIA contract "effectively displaces the agreement between AHCM and AWIS." This is true for future insurance policy sales, but only because AWIS cannot actually retain producers because no advance partner will provide commission advances to AWIS. (Jordan Decl., Ex 1 at ¶14.) As for past policy sales for which Insurety purchased commissions, AWIS still receives revenue that AHCM passes along. (Jordan Decl., Ex 1 at ¶18.) Further, AHCM is actually still involved in every NIIA deal. (*Id.* at ¶17.) The only role that AHCM no longer performs is collection and distribution of funds, which is handled by a separate TPA

mandated by the advance provider. (*Id.*) If NIIA's goal was to displace AHCM and AWIS to NIIA's benefit, the arrangement would be structured to bypass AHCM completely. (*Id.* at ¶19.) Indeed, far from being a source of concern, NIIA's affiliation with AWIS and AHCM is the only reason the arrangement works. (*Id.* at ¶15.)

22.     Third, Insurety illogically claims that the NIIA contract "is likely to harm AWIS and its creditors" and "will benefit the Debtors' insiders to the detriment of AWIS and its creditors." Other than the $10 per member fee for the extra TPA, AHCM is receiving precisely the same funds for past and future insurance contract sales it received prior to the arrangement with NIIA and prior to Insurety ceasing to provide advances. (Jordan Decl., Ex 1 at ¶¶16-18.) AWIS is receiving residual amounts from past commission sales, but it is not receiving any portion of future insurance contract sales because it cannot obtain an advance partner to facilitate those sales. NIIA is not stealing an opportunity of AWIS because there is no scenario where AWIS could provide commission advances. (*Id.* at ¶14.) Because AWIS and AHCM are essentially receiving the same benefits under the NIIA contract that they would receive without it, there is no place for NIIA (or its affiliates) to receive any undisclosed benefit (improper or otherwise) at AWIS or AHCM's expense. (*Id.* at ¶¶16-18.) Indeed, if NIIA's goal was to benefit at the expense of AWIS and AHCM, they best way to do so would be to bypass them entirely, saving $10 per member per month TPA fee if nothing else. (*Id.* at ¶19.)

23.     Fourth, Insurety erroneously claims that the fact that the advance partner would provide advances through NIIA, but not to AWIS as a DIP lender is evidence that the NIIA contract usurped AWIS's opportunity. Insurety's argument is based on flawed premises. For example, there is no reason to believe those in the commission advance industry understand the potential benefits of providing DIP financing. Such benefits may be known to bankruptcy attorneys (and judges),

but there is no reason to think potential lenders or commission purchasers know about them. Also, even assuming they knew about the DIP financing benefits, there are legitimate reasons for them to decide it is now worth it. DIP financing may have some benefits, but it is not risk free. Further, a company in the commission purchase industry may not be interested in the bankruptcy court evaluating their transaction. The fees for commission purchases are high and would likely by usurious if structured as a loan. At a minimum, those in the industry could be concerned that the bankruptcy court would only approve the financing on terms less favorable (to the commission funding company) than are standard in the industry. Indeed, the fact that Insurety cannot identify a single commission advance company that offered to do business with AWIS (including Insurety itself) demonstrates the premise of the argument is flawed.

   **D. Insurety's prior actions demonstrate that NIIA and Jordan have good reason to fear Insurety interfering with its advance partner relationship and that Insurety is advancing interests other than the interests of bankruptcy creditors.**

   24.    Since July 2019, Insurety has repeatedly interfered with Jordan's efforts to obtain replacement commission advances. Deals with two different advance partners failed because of Insurety's efforts. (Jordan Decl., Ex 1 at ¶¶6-11; Safina Aff., Ex. 2.) In fact, Insurety actually obtained a temporary restraining order preventing AWIS from getting an advance partner for almost a month, the very thing Insurety now claims it wants AWIS to do. (Jordan Decl., Ex 1 at ¶7; Temporary Restraining Order, Ex. 3; Extension of TRO, Ex. 4.) Thus, NIIA and Jordan's fear about Insurety interfering with its relationship with NIIA's advance partner is a reasonable one. (Jordan Decl., Ex 1 at ¶12.) NIIA and Jordan's reasonable fears demonstrate that they would suffer undue burden in requiring them to respond to the discovery Insurety seeks to compel. The burden far outweighs Insurety's insufficiently supported assertions of relevance.

   25.    Further, Insurety openly admitted in Court that its preferred outcome was the failure

of AWIS and AHCM even if meant that Insurety would recover less money as a creditor. Insurety's actions demonstrate that it has some other interest that it prioritizes over the interests of creditors of AWIS and AHCM. Indeed, it is notable that Insurety is the only creditor opposing the NIIA contract. In evaluating whether to compel discovery, the Court must seriously consider that Insurety is pursuing the goal of harming AWIS and AHCM with its efforts to compel, rather than pursing the goal to help them as it claims.

### III.   CONCLUSION

FOR THESE REASONS, NIIA and Jordan request that the Court deny Insurety's Motion to Compel.

**SPENCER FANE LLP**

By:      ***/s/ Brian W. Zimmerman***
         Brian W. Zimmerman
         State Bar No. 00788746
         bzimmerman@spencerfane.com
         Nicholas J. Reisch
         State Bar No. 24046699
         nreisch@spencerfane.com
         3040 Post Oak Blvd., Suite 1300
         Houston Texas 77002
         (713) 552-1234
         (713) 963-0859 fax
         **ATTORNEYS FOR NON-PARTY**
         **NATIONAL INDIVIDUAL**
         **INSURANCE AGENCY, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 31, 2020, true and correct copies of the foregoing were served upon the following parties:

Ian T. Peck                                   *Via E-Mail*
Jarom J. Yates
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219

Robert S. Harrell                             *Via E-Mail*
Andrew Elkhoury
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77004

J. Robert Forshey                             *Via E-Mail*
FORSHEY & PROSTOK, LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102

                                              */s/ Brian W. Zimmerman*
                                              Brian W. Zimmerman